Jeffrey Chubak (032112007)
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Petitioners

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| 507 SUMMIT LLC and KOA CAPITAL L.P., | Case No. 3:24-cv-10260 |
|---|---|
| Petitioners, | |
| JIE JIAO HAYES, | **MEMORANDUM IN SUPPORT** |
| Respondent. | |

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ........................................................................................................................... 1

I.    THE RELEVANT PARTIES............................................................................................. 1

        A.    CIH; Fang; Mr. Mo ................................................................................................ 1

        B.    Petitioners ............................................................................................................. 3

        C.    Respondent........................................................................................................... 3

II.    CIH WRITE-OFF OF $84 MILLION DEBT OWED BY FANG ...................................... 3

III.    THE MERGER .................................................................................................................. 4

IV.    THE APPRAISAL PROCEEDING .................................................................................. 6

V.    REASONS FOR THE REQUESTED DISCOVERY ........................................................ 7

ARGUMENT ................................................................................................................................. 7

I.    THE STATUTORY REQUIREMENTS ARE SATISFIED ............................................. 8

        A.    Respondent Resides or is Found Within this District ............................................ 8

        B.    The Discovery is for use in a Foreign Proceeding .................................................. 8

        C.    Petitioners are Interested Persons ........................................................................ 9

II.    THE DISCERTIONARY INTEL FACTORS WEIGH IN FAVOR OF PERMITTING DISCOVERY ..................................................................................................................... 9

        A.    Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"........................................................................................... 9

        B.    "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" ................................................................. 9

        C.    Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" .............. 10

        D.    Whether the request is "unduly intrusive or burdensome" .................................. 10

III.    RELIEF SHOULD BE GRANTED ON AN EX PARTE BASIS ..................................... 11

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................................................... 7, 9

*In re Frasers Group PLC*,
    2024 WL 139488 (D. N.J. Jan. 12, 2024) ............................................................................... 8

*In re Oxus Gold PLC*,
    2007 WL 1037387 (D. N.J. April 2, 2007) ............................................................................. 8

*In re Imanagement Servs. Ltd.*,
    2006 WL 547949 (D. N.J. Mar. 3, 2006) ................................................................................ 8

*In re Third Eye Cap. Corp.*,
    2022 WL 714758 (D. N.J. Mar. 10, 2022) .............................................................................. 8

*In re Alpine Partners, (BVI) L.P.*,
    2022 WL 18956960 (N.D. Cal. Oct. 18, 2022) ....................................................................... 9

*In re Kingstown Partners Master Ltd.*,
    2022 WL 1081333 (S.D.N.Y. April 8, 2022) .......................................................................... 9

*In re Platinum Partners Value Arbitrage Fund L.P.*,
    583 B.R. 803 (Bankr. S.D.N.Y. 2018) .................................................................................... 9

*In re California State Teachers' Retirement System*,
    2017 WL 1246349 (D. N.J. April 3, 2017) ........................................................................... 10

*In re Application of Savan Magic Ltd.*,
    2017 WL 6454240 (D. Nev. Dec. 18, 2017) ......................................................................... 10

*Lufthansa Technik v. Panasonic Avionics Corp.*,
    2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) .................................................................. 10

*In re Ex Parte Petition of the Republic of Turkey*,
    2020 WL 2539232 (D. N.J. May 18, 2020) .......................................................................... 10

*In re Ex Parte Petition of the Republic of Turkey*,
    2020 WL 8073613 (D. N.J. June 4, 2020) ............................................................................ 10

*In re Yilport Holding A.S.*,
    2023 WL 214011 (D. N.J. Feb. 21, 2023) ....................................................................... 10, 11

*LAE Technologies Hong Kong Limited v. Demuren*,
 2024 WL 863464 (D. N.J. Feb. 29, 2024) .............................................................................. 11

*In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*,
 2006 WL 8460903 (D. N.J. 2006) ........................................................................................... 1

*In re NAHC, Inc. Securities Litigation*,
 306 F.3d 1314 (3d Cir. 2002) .................................................................................................. 1

**Statutes and Rules**

28 U.S.C. § 1782 ................................................................................................ 1, 7, 8, 9, 10, 11

Fed. R. Evid. 201 ........................................................................................................................ 1

Local Civ. R. 27.1 ..................................................................................................................... 11

Petitioners 507 Summit LLC and KOA Capital L.P. submit this memorandum in support of their ex parte application for leave to serve respondent Jie Jiao Hayes with a deposition subpoena pursuant to 28 U.S.C. § 1782, and take her testimony for use in a Cayman appraisal proceeding (In the Matter of China Index Holdings Limited, Case No. FSD 2023-0201) to determine the fair value of petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH").

## BACKGROUND

**I.     THE RELEVANT PARTIES**

    **A.     CIH; Fang; Mr. Mo**

CIH is a Cayman Islands exempted company with limited liability, that was spun-off of Fang Holdings Limited ("Fang"), also a Cayman Islands exempted company with limited liability, on June 11, 2019, via dividend distribution of all of CIH's shares to Fang shareholders. ([Fang Form 20-F filed 5/27/20](#) at 39; [CIH Form 20-F filed 4/26/22](#) at 51.[1])

According to its 2021 annual report ([id.](#) at 50-51), CIH was originally incorporated as Selovo Investments Limited under the laws of the British Virgin Islands in 2007 as a wholly owned subsidiary of Fang. In 2018 the company re-domiciled to the Cayman Islands and changed its name to China Index Holdings Limited. In 2019 CIH and Fang separated in the above-described spin-off. Following the spin-off, Fang retained its business operating a real estate internet portal focusing primarily on serving the residential real property sector, while CIH provided real estate data and analytics tools under the information services segment in addition to promotion services and listing services under the marketplace services segment.

---

[1] This Court may take judicial notice of SEC filings cited herein. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, 2006 WL 8460903, at *4 (D. N.J. 2006) (SEC filings are subject to judicial notice); *see also In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314 (3d Cir. 2002) (discussing FRE 201(b)). For ease of reference, they are hyperlinked.

1

While Fang and CIH shares traded separately as a result of the spin-off, the two businesses remained intertwined:

(1) Post-spin-off, the two entities continued to share revenue and operating responsibilities under a Business Cooperation Agreement. (CIH Form F-1/A filed 5/24/19, Exhibit 10.4.)

(2) The two entities have balance sheet assets or liabilities owed to the other. For example, and as described below, Fang has an outstanding legal obligation to repay a $84 million loan to CIH; and conversely, CIH has a claim against Fang for the same amount (CIH Form 6-K filed 9/28/21, Exhibit 99.7).

(3) The two entities share or have shared common board members and Management. Richard Jiangong Dai, the nephew (Fang Form 20-F filed 5/27/20 at 22) of Fang's and CIH's controlling shareholder Mr. Vincent Tianquan Mo, has been the chairman of the board of Fang and CIH. (CIH Form 20-F filed 4/26/22 at 43.) Mr. Dai has a history of management responsibilities at Fang include serving as Fang's president and CEO from 1999 to 2014 and Fang's director from September 2010 to February 2016. (Id. at 87.) Mr. Mo was previously chairman of both boards. (Fang Form 6-K filed 6/13/19, Exhibit 99.1.)

(4) Fang owned shares of CIH and had significant voting power over CIH. As of February 24, 2023, Fang owned 6,964,415 Class A ordinary shares entitled to one vote per share and 11,119,686 Class B ordinary Shares entitled to ten votes per share. (CIH Schedule 13E-3/A filed 2/24/23 at 87-88.) Fang had beneficial ownership of 20% and voting control of 39% as of February 24, 2023. (Id.) At all relevant times Mr. Mo controlled in excess of 50% of the voting power of each company.[2]

---

[2] Fang disclosed in its 2019 (last-filed) annual report, that 88.7% of its Class B ordinary shares were owned by Media Partner Technology Limited and Next Decade Investments Limited. (Fang Form 20-F filed 5/27/20 at 24, 91.) Both of those entities are controlled by Mr. Mo. (CIH Schedule

2

### B. Petitioners

Petitioners were beneficial owners of ADS[3] of CIH that have been converted to Class A ordinary shares. (Chubak Cert. Exhibit 8 ¶¶2, 4, 24, 45-46, 86.g; id. Exhibit 9 at 5.) Petitioners dissented from the below-described merger. (Id. ¶¶11, 13, and at 5.)

### C. Respondent

Respondent is a chartered financial analyst with a law degree from Oxford University. CIH's last-filed annual report states that she was a director since May 2019 and also served on CIH's audit and governance committee (CIH Form 20-F filed 4/26/22 at 87-88, 91-92) which period includes that when CIH wrote off Fang's below-described $84 million debt to CIH. She previously served as Fang's general counsel and head of its investor relations department. (Id. at 88.)

## II. CIH WRITE-OFF OF $84 MILLION DEBT OWED BY FANG

On November 13, 2020, Evenstar Master Fund SPC, for and on behalf of Evenstar Master Sub-Fund I Segregated Portfolio and Evenstar Special Situations Limited ("Evenstar") commenced a winding up proceeding against Fang (Cause No. FSD 278 of 2020) in the Grand Court of the Cayman Islands.

---

13E-3/A filed 2/24/23) at 3-4.) Together with Class A ordinary shares owned by Mr. Mo and his affiliates, he exercised approximately 71.7% of voting power under the dual-class share structure. (Fang Form 20-F filed 5/27/20 at 24, 91.) In addition, as of March 31, 2022, Mr. Mo "beneficially owned approximately 27.2% of [CIH's] total ordinary shares and approximately 62.2% of the voting power of our outstanding shares. Therefore, [he] has decisive influence over matters requiring shareholders' approval, including election of directors and significant corporate transactions, such as a merger." (CIH Form 20-F filed 4/26/22 at 50.)

[3] Both companies' Class A ordinary shares were/are not directly traded. Instead, a class of securities called American Depository Shares ("ADS") exist to represent the underlying Class A ordinary shares which are held by a third-party custodian known as a depositary.

On May 3, 2021, Fang announced (CIH Form 12b-25 filed 5/3/21 Part III) that the winding up proceeding triggered a default that resulted in the acceleration of certain convertible loans, and that Fang "is under negotiation with the convertible note holders for the repayment schedule of the outstanding amount under the convertible notes."

CIH and Fang entered into a Supplemental Agreement dated September 24, 2021, signed by Mr. Mo on behalf of both CIH and Fang (CIH Form 6-K filed 9/28/21, Exhibit 99.7) under which CIH would lend $84 million to Fang. If Fang repaid CIH said amount by December 31, 2023, then no interest thereon would be due, but if it did not then interest would accrue at the rate of 1%/year and such unpaid amounts would be immediately due and payable.

Long before maturity, and despite the absence of any default event, CIH wrote down the $84 million receivable to a value of zero, ostensibly on the ground that Fang was not creditworthy. (CIH Form 20-F filed 4/26/22 at 87.) At the same time (Chubak Cert. Exhibit 7 ¶8), the Cayman Court found in the winding up proceeding, based on evidence proffered by Fang, that Fang was solvent on a balance sheet and cash flow basis, in both cases by amounts well in excess of $84 million.

The write-off was double the implied value ($42.3 million) Roth Capital, the financial advisor to the special committee (discussed below) ascribed to the enterprise value of CIH (Fairness Opinion at 5) and just shy of the implied equity value ($92 million) (CIH Form 6-K filed 12/22/22, Exhibit 99.1) under the merger transaction.

### III.   THE MERGER

On August 31, 2022, CIH's board established a special committee to evaluate Fang's proposal to take CIH private for $.84 per share or per ADS. (CIH Schedule 13E-3/A filed 2/24/23 at 30.)

4

On October 12, 2022, Mr. Mo and certain of his affiliates (including Fang) and General Atlantic[4] entered into a "Consortium Agreement" in relation to the then-contemplated merger transaction. (Id. at 31-32.) On October 13, 2022, the consortium members submitted a nonbinding proposal to buy all outstanding Class A and Class B ordinary shares of CIH, including those represented by ADSs, not beneficially owned by the consortium members in a going-private transaction. (Id.) On November 25, 2022, Evenstar joined the consortium. (Id. at 34.)

Following negotiations, the consortium "increase[d] the purchase price to US$1.00 per Share or ADS" and indicated that was its "best and final offer". (Id. at 35-36.)

"On December 22, 2022, Roth Capital orally rendered to the Special Committee its opinion (which was subsequently confirmed in writing by delivery on the same date of Roth Capital's written opinion addressed to the Special Committee) as to the fairness, from a financial point of view, of the Per Share Merger Consideration to be received by the holders of the Shares (other than the Excluded Shares [i.e. shares held by the consortium] and Dissenting Shares) and the Per ADS Merger Consideration to be received by the holders of ADS (other than ADS representing the Excluded Shares) pursuant to the Merger Agreement and the Plan of Merger." (Id. at 23.)

The special committee approved the transaction on the basis of "Roth Capital's presentation of its financial analyses and its opinion." (Id. at 36.)

---

[4] General Atlantic Singapore Fund Pte. Ltd. had previously made a take-private proposal that provided for merger consideration of $2.32 per share or ADS not already owned by it. (CIH Schedule 13E-3/A filed 2/24/23 at 29.) The board did not engage with respect to that proposal, because it was not supported by Mr. Mo. (Id.) After the subsequent Fang proposal was publicly disclosed, General Atlantic re-engaged with Fang (id. at 30) and joined the consortium that Fang led.

5

"Following the meeting of the Special Committee, the Board convened, and based upon the unanimous recommendation of the Special Committee … the Board" approved the merger. (Id. at 36-37.)

The merger documents were executed on the same day the special committee and board approved the same. (Id. at 37.) The documents included an "Equity Commitment Letter" under which the Sponsor (defined as Fang) "or its Affiliates named therein" agreed to provide the financing needed to consummate the merger. (CIH Form 6-K filed 12/22/22, Exhibit 99.2 (Agreement and Plan of Merger) § 5.12(a).) In its Fairness Opinion (at 5), Roth Capital estimated the required financing to be $15 million. Roth Capital stated it believed Fang to be a creditworthy sponsor, in that it "has in excess of $50 million on its balance sheet." The statement that Fang has in excess of $50 million of cash, while consistent with Fang's December 31, 2020 balance sheet, gives an understated impression of Fang's likely liquid resources. As of December 31, 2020, Fang had cash of $409 million and cash equivalents (short term investments) of $91.6 million. The December 31, 2020 financial statements (Fang Form 6-K filed 3/29/21) were the last financial disclosure by Fang filed with the SEC.

The merger was consummated April 17, 2023. (CIH Form 6-K filed 4/17/23, Exhibit 99.1.)

IV.   THE APPRAISAL PROCEEDING

Under Companies Act § 238(1), the Cayman Court in the appraisal proceeding is required to determine the "fair value" of a dissenting shareholder's shares. The parties to the appraisal proceeding—petitioners as dissenting shareholders and CIH—submit evidence, expert testimony and briefs which get weighed in determining fair value.

CIH commenced the appraisal proceeding on July 19, 2023. (Chubak Cert. Exhibit 9.) Under Grand Court Rules, Order 24, Rule 3, the Cayman Court may order any party to provide discovery of "documents which are in their possession, custody or power relating to any matter in

6

question between them in the action." The Cayman Court, however, has no power to order nonparties outside of the court's jurisdiction to produce evidence. Because respondent is outside the Cayman Court's jurisdiction, it lacks the ability to order respondent to provide evidence in the appraisal proceeding. Nevertheless, the Cayman Court affirmatively held that § 1782 can be used to gather discovery in connection with appraisal proceedings before said court. *E.g. Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553 (Chubak Cert. Exhibit 6) ¶¶57-58.

## V.  REASONS FOR THE REQUESTED DISCOVERY

Petitioners wish to take discovery concerning inter alia the $84 million write-off which happened under respondent's watch and naturally would have a significant impact on Class A ordinary share value had it not occurred. Petitioners understand that respondent is no longer with CIH, and do not expect she is still in possession, custody or control of relevant documents. Petitioners accordingly wish to take her deposition.

## ARGUMENT

Under 28 U.S.C. § 1782, district courts may authorize discovery for use in a pending foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). A § 1782 application must satisfy three requirements: (1) the discovery must be sought from someone who resides or is found within the district; (2) the discovery must be for use before a foreign tribunal; and (3) the applicant must be an "interested person." *Id*. at 241. If these statutory requirements are met, the following discretionary factors are considered: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or

other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65.  In considering these factors, the Court is required to keep in mind "the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id*. at 252.  As detailed below, petitioners satisfy the three statutory requirements and each discretionary factor weighs in favor of granting their application.

## I. THE STATUTORY REQUIREMENTS ARE SATISFIED

### A. Respondent Resides or is Found Within this District

Respondent resides at 650 Route 518, Skillman, NJ 08558 (Chubak Cert. Exhibits 1-2) and works at Songbird Capital LLC, 14 Nassau Street, Princeton, NJ 08542 (id. Exhibits 3-5).  She accordingly "resides or is found" in this district.  *In re Frasers Group PLC*, 2024 WL 139488, at *1 n.1 (D. N.J. Jan. 12, 2024) ("She very well may be 'found' in [district] as a result of her place of employment"); *In re Oxus Gold PLC*, 2007 WL 1037387, at *3 (D. N.J. April 2, 2007) (respondent was found in this district because he "lease[d] a residential apartment in New Jersey in which resides at least two months each year" and "has owned for more than 23 years a separate residential property in New Jersey").

### B. The Discovery is for use in a Foreign Proceeding

Respondent's deposition testimony is sought for use in the Cayman appraisal proceeding. *In re Imanagement Servs. Ltd.*, 2006 WL 547949, at *3 (D. N.J. Mar. 3, 2006) (to satisfy the "for use" requirement, "it is sufficient that the applicant intend to offer the evidence to a foreign court"); *In re Third Eye Cap. Corp.*, 2022 WL 714758, at *3 (D. N.J. Mar. 10, 2022) ("Discovery may be considered 'for use' in a foreign proceeding if it will be employed with some advantage of serve some use in the proceeding") (internal quotations and citations omitted).

8

### C. Petitioners are Interested Persons

Petitioners are party to the appraisal proceeding. There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.

## II. THE DISCERTIONARY INTEL FACTORS WEIGH IN FAVOR OF PERMITTING DISCOVERY

### A. Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"

Respondent is not a party to the appraisal proceeding (Chubak Cert. Exhibit 9), and thus she will not be subject to party discovery. Because she resides and works in the United States, the Cayman Court lacks jurisdiction to compel her deposition testimony.

### B. "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"

Multiple United States courts have recognized Cayman courts are receptive to evidence obtained via § 1782. *E.g. In re Alpine Partners, (BVI) L.P.*, 2022 WL 18956960, at *6 (N.D. Cal. Oct. 18, 2022) (collecting cases, in § 1782 proceeding commenced to take discovery for use in appraisal proceeding, and noting Cayman Court receptivity is reflected by Directions Order which fixed a deadline for § 1782 discovery); *In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *5 (S.D.N.Y. April 8, 2022) (collecting cases, in § 1782 proceeding commenced to take discovery for use in Cayman appraisal proceeding); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law").

### C. Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"

This factor considers whether the discovery sought seriously offends public policy and is satisfied unless the foreign court actively prohibits gathering the information sought. *In re California State Teachers' Retirement System*, 2017 WL 1246349, at *3 (D. N.J. April 3, 2017) (granting application where "there is no indication that a request under § 1782 circumvents any German policy on discovery). There is no prohibition on obtaining nonparty discovery in aid of § 238 appraisal proceedings or for use in other civil actions under Cayman law. *In re Application of Savan Magic Ltd.*, 2017 WL 6454240, at *4 (D. Nev. Dec. 18, 2017); *Lufthansa Technik v. Panasonic Avionics Corp.*, 2017 WL 6311356, at *4 (W.D. Wash. Dec. 11, 2017); *see also Lyxor*, [2009] CILR 553 (Chubak Cert. Exhibit 6) ¶¶57-58.

### D. Whether the request is "unduly intrusive or burdensome"

As an initial matter, the party responding to § 1782 discovery is the one that must establish that such discovery presents an undue burden. *In re Ex Parte Petition of the Republic of Turkey*, 2020 WL 2539232 (D. N.J. May 18, 2020), *vacated on other grounds*, 2020 WL 8073613 (D. N.J. June 4, 2020) ("Before a court will entertain an objection on burdensome grounds, the party asserting the objection must submit an affidavit or evidence revealing the nature of the burden"). The requested discovery is deposition testimony bearing on the value of Petitioners' Class A ordinary shares. To the extent respondent believes such discovery to be unwarranted, she is free to move to quash. *In re Yilport Holding A.S.*, 2023 WL 214011, at *3 (D. N.J. Feb. 21, 2023) ("An order authorizing discovery under Section 1782 may be issued on an ex parte application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena") (collecting cases).

**III.     RELIEF SHOULD BE GRANTED ON AN EX PARTE BASIS**

Local Civil Rule 27.1 (titled "Depositions for use in a Foreign Country") expressly authorizes § 1782 applicants to "apply ex parte to the Court for an appropriate order". Consistent therewith, courts regularly grant ex parte § 1782 applications. *E.g. LAE Technologies Hong Kong Limited v. Demuren*, 2024 WL 863464, at *2 (D. N.J. Feb. 29, 2024) (noting "the ex parte nature of most § 1782(a) applications"); *Yilport*, 2023 WL 214011, at *3 (quoted above).

## CONCLUSION

For the foregoing reasons, petitioners request that the Court grant their application and issue an order permitting them to serve the requested deposition subpoena on respondent.

Dated: November 4, 2024                                     Amini LLC

/s/ Jeffrey Chubak
Jeffrey Chubak (032112007)
131 West 35th Street
12th Floor
New York, NY 1001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Petitioners

11